UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA

v.                                          CASE NO.  8:03-cr-445-T-23EAJ
                                                      8:13-cv-2787-T-23EAJ
JULIO CESAR HURTADO-AGUIRRE
_____/

## **O R D E R**

Hurtado-Aguirre's motion to vacate under 28 U.S.C. § 2255 (Doc. 1)

challenges the validity of his conviction for conspiracy to possess with the intent to

distribute cocaine while aboard a vessel, for which offense he is imprisoned for 168

months.  The motion is time-barred and lacks merit.

Rule 4, Rules Governing Section 2255 Cases, requires both a preliminary

review of the motion to vacate and a summary dismissal "[i]f it plainly appears from

the face of the motion, any attached exhibits, and the record of prior proceedings that

the moving party is not entitled to relief . . . ."  *Accord Wright v. United States*, 624 F.2d

557, 558 (5th Cir. 1980)[1] (finding the summary dismissal of a Section 2255 motion

was proper "[b]ecause in this case the record, uncontradicted by [the defendant],

shows that he is not entitled to relief"); *Hart v. United States*, 565 F.2d 360, 361 (5th

---

[1]  Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

Cir. 1978) ("Rule 4(b) of § 2255 allows the district court to summarily dismiss the motion and notify the movant if 'it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief.'").

The Anti-Terrorism and Effective Death Penalty Act creates a limitation for a motion to vacate. "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of . . . the date on which the judgment of conviction becomes final . . . ." 28 U.S.C. § 2255(f)(1). Because his conviction was final in 2005, Hurtado-Aguirre's limitation expired one year later in 2006. Hurtado-Aguirre dated his motion to vacate in 2013, which is seven years late. Consequently, Hurtado-Aguirre's motion to vacate is time-barred under Section 2255(f)(1).

Affording the motion a generous interpretation, Hurtado-Aguirre challenges the district court's jurisdiction under *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012), and asserts entitlement to a new limitation under Section 2255(f)(3), which provides for beginning the limitation on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . ." Although he moved to vacate within one year of *Hurtado*, that decision affords Hurtado-Aguirre no relief.

First, a new limitation under Section 2255(f)(3) requires the recognition of a

new right by the Supreme Court.  *Hurtado* is a circuit court decision, not a Supreme

Court decision.  As a consequence, Hurtado-Aguirre cannot benefit from *Hurtado*

under Section 2255(f)(3)'s provision for a new limitation.

Second, *Hurtado* is factually distinguishable.  Hurtado-Aguirre was convicted

of violating the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C.

§70503(a), *et. seq.*, which is based on the constitutional authority granted to Congress

"[t]o define and punish Piracies and Felonies committed on the high Seas, and

Offences against the Law of Nations."  U.S. Const., Art. I, § 8, cl. 10.  *Hurtado*, 700

F.3d at 1248-49, explains the breadth of jurisdiction under the MDLEA.

> The Supreme Court has interpreted that Clause to contain three
> distinct grants of power: the power to define and punish piracies, the
> power to define and punish felonies committed on the high seas, and
> the power to define and punish offenses against the law of nations.
> *See United States v. Smith*, 18 U.S. (5 Wheat.) 153, 158–59, 5 L. Ed.
> 57 (1820). The first two grants of power are not implicated here:
> piracy is, by definition, robbery on the high seas, *United States v.
> Furlong*, 18 U.S. (5 Wheat.) 184, 198, 5 L. Ed. 64 (1820), and the
> Felonies Clause is textually limited to conduct on the high seas, *see*
> U.S. Const., Art. I, § 8, cl. 10. The United States relies instead on
> the third grant – the Offences Clause – as the source of congressional
> power to proscribe the defendants' drug trafficking in the territorial
> waters of Panama. The question whether Congress has the power
> under the Offences Clause to proscribe drug trafficking in the
> territorial waters of another nation is an issue of first impression in
> our Court.

*Hurtado* rejects the argument that the "Offences Clause" authorizes the

MDLEA to control drug activity that occurs within a foreign country's territorial

water.  "Because drug trafficking is not a violation of customary international law,

we hold that Congress exceeded its power, under the Offences Clause, when it proscribed the defendants' conduct in the territorial waters of Panama."   700 F.3d at 1258.  *Hurtado* is inapplicable to Hurtado-Aguirre because in his plea agreement Hurtado-Aguirre stipulates that he was "apprehended in international waters in the Easter Pacific Ocean . . . ." "International water" is all area beyond twelve miles from land.  *United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003).  In his plea agreement (Doc. 69 at 13 in 8:03-cr-445-T-23EAJ), Hurtado-Aguirre admits to the following facts:

> On October 26, 2003, the defendant, along with his co-defendants, were apprehended in international waters in the Eastern Pacific Ocean by a United States Coast Guard LEDET team, on board the United States Navy frigate USS Samuel B. Roberts, while attempting to transport over 5,500 pounds of cocaine from Colombia, S.A. to Mexico, for ultimate importation and distribution in the United States. The smuggling vessel, F/V Santa Barbara, was initially observed proceeding on a northwesterly course without navigational lights. Upon overtly contacting the F/V Santa Barbara and engaging in standard right of approach questions, the F/V Santa Barbara attempted to ram the USS Samuel B. Roberts. Upon receiving permission to board the vessel from the Government of Colombia, a Coast Guard LEDET team boarded and inspected the F/V Santa Barbara. Ion scans performed on the vessel resulted in positive readings for various narcotics, including cocaine, in the engine-room and state-room. Upon completion of a space accountability assessment, permission was granted to perform a minimally intrusive search of the dry goods storage room which led to the discovery of a false compartment containing ninety bales of cocaine with a total weight of approximately three tons. The government of Colombia was notified of the findings and granted permission for the United States to assume jurisdiction of the vessel, crew and contraband for prosecution purposes. Accordingly, the crew were brought to the Middle District of Florida to face prosecution.

In response to motion to vacate, the United States provides a copy of the "ship's log," which both discloses the exact location of Hurtado-Aguirre's vessel when it was seized and places the vessel in the eastern Pacific Ocean approximately 208 miles southwest of Malpelo Island, Columbia.  Hurtado-Aguirre files no opposition to the response.  Because the vessel was in international water, (1) *Hurtado* is inapplicable, (2) Hurtado-Aguirre is not entitled to a new limitation, and (3) jurisdiction properly lies in the United States.

Accordingly, the motion to vacate under 28 U.S.C. § 2255 (Doc. 1) is **DISMISSED** as time-barred.  The clerk must close this case.

### DENIAL OF BOTH A
### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Hurtado-Aguirre is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Hurtado-Aguirre must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  The motion to vacate is

clearly time-barred.  Hurtado-Aguirre is not entitled to appeal *in forma pauperis* because he is not entitled to a COA.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Hurtado-Aguirre must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on December 5, 2014.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE